**Albert HOFFMAN, Plaintiff-Appellant,**

v.

**LONZA, INC., a corporation, and Oil, Chemical & Atomic Workers' International Union, Pekin Local No. 7–662, a labor organization, Defendants-Appellees.**

No. 80–2314.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1981.

Decided Aug. 31, 1981.

Lawrence W. Propp, Peoria, Ill., for plaintiff-appellant.

Arnold Rosenberg, Cornfield & Feldman, Chicago, Ill., for defendants-appellees.

Before BAUER, Circuit Judge, PECK, Senior Circuit Judge,* and CUDAHY, Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

Appellee Oil, Chemical and Atomic Workers' International Union, Pekin Local No. 7–662 filed a grievance with Lonza, Inc. on behalf of appellant Hoffman, alleging that Hoffman had been wrongfully discharged. The grievance moved through the first two steps of the grievance procedure that was provided by the collective bargaining agreement between Lonza, Inc. and the Union without vindicating Hoffman. In order for the grievance to proceed to the third step, the Union was required to file a written appeal of the step two result within five days. If no appeal was filed within that time, the collective bargaining agreement provided that the grievance was to be considered satisfactorily resolved at step two. The Union "forgot" to give the required written appeal within five days, and subsequently informed Hoffman of this oversight. These facts were alleged by the Union in support of its motion for summary judgment and were admitted by Hoffman in his cross-motion for summary judgment. The district court granted the Union's motion for summary judgment and denied Hoffman's cross-motion.

■ This appeal raises the single question whether a labor union can be sued in federal court, pursuant to 29 U.S.C. § 185, for a breach of its duty of fair representation of an employee in a grievance proceeding because the union, without explanation, permitted the employee's grievance proceeding to be terminated by failing to file a timely notice of intent to carry the grievance to arbitration. Because the courts may enforce the duty of a union to fairly represent an employee only when union

conduct breaching that duty is intentional, invidious, and directed at the employee, *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971), we hold that an action for breach of the duty to fairly represent requires more than a showing that the union failed to properly process the employee's grievance.

Hoffman contends that the Union breached its duty to fairly represent him in the grievance procedure when it "forgot" to file a notice of appeal within the proscribed time limit. Hoffman recognizes that a legal action against the Union for a breach of its duty to fairly represent him can be sustained only if the Union acted in an arbitrary or discriminatory manner, or if the Union acted in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). While conceding that the Union was not required to process his claim through the entire grievance procedure, Hoffman argues that the duty of fair representation required the Union to evaluate his claim before deciding to abandon it. Hoffman contends that negligently permitting the claim to lapse by "forgetting" a deadline rather than by a conscious, rational decision to abandon the grievance was an arbitrary and perfunctory act by the Union and a breach of its duty.

In *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (1975) (*Ruzicka I*), a case with facts essentially identical to those of the present case, the United States Court of Appeals for the Sixth Circuit appeared to adopt the reasoning advanced by Hoffman in the present case. Acknowledging the "arbitrary, discriminatory, or bad faith" standard of *Vaca*, the Sixth Circuit concluded that negligent handling of a grievance unrelated to the merits of that grievance was a "clear example of arbitrary and perfunctory handling of a grievance" and constituted unfair representation that was cognizable by the court.[1] *Id.* at 310. In reach-

---

* Honorable John W. Peck, Senior Circuit Judge for the Sixth Circuit Court of Appeals, sitting by designation.

1. Writing a separate concurring opinion, Judge McCree was unable to accept the majority's proposition because "arbitrary" and "perfunc-

ing that conclusion the Sixth Circuit was influenced by a statement in *Vaca* that a union administering grievance and arbitration machinery must make good faith and nonarbitrary decisions to the merits of a grievance. *Id.* The Sixth Circuit concluded that an unexplained failure to make any decision breached that duty.

In *Ruzicka v. General Motors, et al.*, 649 F.2d 1207 (1981) (*Ruzicka II*), the Sixth Circuit clarified its holding in *Ruzicka I.* In *Ruzicka II* the Sixth Circuit explained that a union's failure to act on an employee's grievance could be a breach of the union's duty to fairly represent only when the union's failure to act amounts to more than ordinary negligence. The court stated that in order for a union's omission to give rise to an action for breach of the duty to fairly represent, that omission would have to be "intended to harm" the employee or be conduct reflecting "reckless disregard for the rights of the individual employee." The Sixth Circuit concluded that "arbitrarily" failing to process a grievance, without a sound reason for that failure, would render the union liable for unfair representation. At 1212. Thus, *Ruzicka II* makes clear that the Sixth Circuit has not adopted Hoffman's contention that simply "forgetting" to file a notice of appeal constitutes a breach of the duty to fairly represent. Rather, *Ruzicka II* asserts that the type of "arbitrary" conduct needed for such a breach is conduct "intended to harm" the employee or conduct reflecting a "reckless disregard for the rights of the individual employee."

This Circuit has not previously decided whether an action may lie against a labor union for a breach of its duty to fairly represent an employee when the union unintentionally permits the employee's grievance proceeding to lapse without properly evaluating the merits of that grievance. Prior decisions of this Court have advanced the proposition that proof of negligence or poor judgment by a union handling a griev-

ance is not sufficient to support an action for unfair representation. *E. g., Dwyer v. Climatrol Industries, Inc.*, 544 F.2d 307 (1976); *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290 (1975). However, in these cases the unions involved had attempted to process the employees' grievances, and the subsequent claims of failure to fairly represent were based on alleged shortcomings in the unions' performances. In the present case, as in *Ruzicka*, the complaint arises from the union's failure to act upon the merits of the grievance, and gives rise to the question whether the union's negligence in failing to act is qualitatively different from negligent action insofar as the duty to fairly represent is concerned.

Our decisions in *Miller v. Gateway Transportation Co., Inc.*, 616 F.2d 272 (1980) and *Baldini v. Local Union No. 1095*, 581 F.2d 145 (1978), relied on by the concurrence are of no assistance in determining whether a simply negligent failure to process a grievance may be the type of "arbitrary" conduct sufficient to constitute a breach of the union's duty to fairly represent. In *Gateway* and in *Baldini* this Court reversed summary judgments against employees because in each case there existed genuine issues of fact whether a union's conduct in handling an employee's grievance breached the union's duty to fairly represent. In *Gateway*, the record indicated that the union had made no effort to represent the employee. This circumstance permitted inferences that the union's conduct was "arbitrary, discriminatory, or in bad faith." In *Baldini*, the record permitted inferences that the union's failure to proceed to arbitration was motivated by malice or discrimination or by bad faith. Neither of these cases hold that the "arbitrary" conduct of *Vaca* may be anything less than an intentional wrongdoing, although the *dicta* of footnote five in *Baldini*, 581 F.2d at 150, makes that statement.

█ The Supreme Court has made it clear that the employees' judicial remedy for "unfair representation" is not based on

tory" are adjectives characterizing intentional conduct and the evidence showed only that the union unintentionally failed to act.

concepts of due process. Rather, "the duty of fair representation was judicially evolved ... to enforce fully the important principle that no individual union member may suffer invidious, hostile treatment at the hands of his coworkers." *Lockridge, supra* 403 U.S. at 301, 91 S.Ct. at 1925. The remedy for a failure to fairly represent "carries with it the need to adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Id.*[2]

The Supreme Court has required this showing of intentional misconduct in order to limit the situations in which an employee may judicially contest the results of grievance and arbitration proceedings that are the subject of collective bargaining and properly within the jurisdiction of the National Labor Relations Board rather than the jurisdiction of the courts. In order to assure that interference with the administrative process by the courts is so limited, the Court stated that the "distinction ... between honest, mistaken conduct, on the one hand, and deliberate and severely hostile and irrational treatment, on the other, needs strictly to be maintained." *Id.*

There is a second important reason for limiting suits for breach of the duty to fairly represent to instances of intentional misconduct by unions. Where an employee is successful in showing that he was not fairly represented in a grievance proceeding, then the result of that proceeding may be set aside and the employee then permitted to contest his dispute with his employer in court. Thus, in many "unfair representation" suits, as in the present case, while the union is a putative defendant, the ultimate relief sought by the employee is reinstatement and backpay. At least insofar as an employee seeks reinstatement and backpay, the union defendant of a suit for "unfair representation" may have little reason to vigorously contest the issue of alleged union wrongdoing. To permit an employee to recover because his union "forgot" to follow required grievance procedures would create an unacceptably high risk of collusion between union and employee, both of whom may share the same ultimate goal of reinstatement of the employee. By permitting actions for failure to fairly represent only where the employee can show intentional, invidious misconduct by the union, the possibility of collusive suits is minimized.

For these reasons it is apparent that an action based on a duty to fairly represent cannot be based solely on some action or omission by the union that results in an employee not receiving a "fair" hearing on the merits of a grievance. The legal action based on the union's duty to fairly represent might be more properly labeled as an action for the union intentionally causing harm to an employee involved in a grievance proceeding. The "duty" is not breached and the employee has no remedy without substantial evidence of fraud, deceitful action or dishonest conduct. *Lockridge, supra* 403 U.S. at 299, 91 S.Ct. at 1924, citing *Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). We must therefore part company with the

---

**2.** Contrary to the view of the concurrence, *Lockridge* is quite clearly the Supreme Court's most definitive amplification of the *Vaca* language. The Court stated in *Lockridge* that for employee Lockridge to make out a claim of breach of the duty of fair representation under § 301 of the National Labor Relations Act, Lockridge must have proved, " 'arbitrary or bad-faith conduct on the part of the union.' *Vaca v. Sipes, supra* [386 U.S.] at 193 [87 S.Ct. at 918]. There must be 'substantial evidence of fraud, deceitful action or dishonest conduct.' *Humphrey v. Moore, supra* [375 U.S. 335] at 348 [84 S.Ct. 363, 11 L.Ed.2d 370]." 403 U.S. at 299, 91 S.Ct. at 1924. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1975) does not represent a retreat by the Supreme Court from this interpretation of *Vaca*. In *Hines* the Court stated that the employees' burden in judicially challenging the result of the arbitral process "will remain a substantial one, far too heavy in the opinion of some." *Id.* at 570, 96 S.Ct. 1048, 47 L.Ed.2d 231. The Court then asserted that arbitral decisions where the union's representation of the employee has been "dishonest, in bad faith, or discriminatory" are subject to relitigation. *Id.* at 571, 96 S.Ct. 1048, 47 L.Ed.2d 231. There is nothing in *Hines* to suggest that the "arbitrary" conduct of *Vaca* can be less than the "deliberate and severely hostile and irrational treatment" of *Lockridge*.

Sixth Circuit, and hold that an action for failure to fairly represent cannot be based solely on an allegation that a union unintentionally failed to file a notice that would permit a grievance to proceed to arbitration.

Hoffman admitted that the Union "forgot" to make a timely filing of a notice of appeal and offered no proof to create a genuine issue of fact whether the "forgetfulness" was in any manner intentional or calculated. Mere negligence cannot rise to the level of misconduct necessary to support an action for breach of the Union's duty of fair representation. Stating that the Union should have considered the merits of Hoffman's grievance rather than permitting his claim to lapse by failing to file a timely notice of appeal does nothing more than describe the Union's alleged negligence. It does not state a claim of arbitrary, discriminatory, or bad faith conduct.

The judgment of the district court is Affirmed.

CUDAHY, Circuit Judge, concurring.

With all respect, in its effort to consign *Ruzicka v. General Motors Corp.*, 523 F.2d 306 (6th Cir. 1975) (*Ruzicka I*) to an early grave, the majority inadequately examines or overlooks several highly pertinent decisions of this and other circuits as well as the recent teachings of the Supreme Court. The analysis of the majority purports to rely heavily on *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971), to suggest what seem to me to be extreme standards of union default in establishing breaches of the duty of fair representation. Reliance on *Lockridge* to require substantial evidence of "fraud, deceitful action or dishonest conduct" in showing a breach of duty of fair representation is misplaced. Nor do I believe the dicta in *Lockridge* about "deliberate and severely hostile and irrational treatment" are controlling in an action against an employer for breach of the collective bargaining agreement such as the case before us. *Lockridge*, insofar as it contains or suggests this heady language, is of dubious relevance

since it deals with the preemption of state intra-union common law contract claims by the National Labor Relations Act. But we are concerned here with the quite different matter of breach of the duty of fair representation as a prerequisite to an action by an employee under Section 301 of the Labor Management Relations Act of 1947 for breach of a collective bargaining agreement.

*Lockridge* was followed five years later by *Hines v. Anchor Motor Freight*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), a Section 301 case which neither cites nor discusses *Lockridge*. *Hines* reaffirms the proposition that merely "arbitrary" conduct by a union is a clear basis of liability:

[i]n *Vaca* 'we accept[ed] the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion,' 386 U.S. at 191 [87 S.Ct. at 917] ... Although 'the Union might well have breached its duty had it ignored [the employee's] complaint or had it processed the grievance in a perfunctory manner, [it was not guilty of such malfeasance in *Vaca*].' [*Vaca*] at 194, [87 S.Ct. at 919].

424 U.S. at 568–69, 96 S.Ct. at 1058.

When faced with the challenge of measuring the effect of *Lockridge* on the *Vaca* standards, this court held in *Baldini v. Local Union No. 1095*, 581 F.2d 145 (7th Cir. 1978), that

[o]ccasional sentences lifted from their context might make it seem that invidious hostility or some sort of malice is always required, *see, e. g., Motor Coach Employees v. Lockridge*, 403 U.S. 274, 300, 301, 91 S.Ct. 1909 [1924, 1925], 29 L.Ed.2d 473 (1971); *Williams v. General Foods Corp.*, 492 F.2d 399, 405 (7th Cir. 1974), but the treatment of the issue in *Hines v. Anchor Motor Freight, Inc., supra*, leaves little doubt that such has not become the law. Nor do we think a fair reading of *Lockridge* or *Williams* or other cases cited by the Company to this effect really supports its argument.

*Baldini*, 581 F.2d at 150–51 n.5.[1] *Baldini* emphasized that it is possible for a union to act arbitrarily vis-a-vis a member's grievance without a showing of discrimination or bad faith. *Id.* at 150–51. The standard advocated by the majority in the instant case would not (so far as I can discern) permit this lesser showing.

A still more recent decision of this court employed *Baldini* to hold that

[a]lthough evidence of intentionally hostile or invidious action by a union is clearly relevant to determining whether the duty of fair representation has been breached, *the duty may be breached without scienter* on the part of the union . . . . A union also breaches its duty when it arbitrarily ignores or perfunctorily processes a grievance.

*Miller v. Gateway Transportation Co.*, 616 F.2d 272, 277 n.11 (7th Cir. 1980) (emphasis supplied). The *Gateway* holding expressly rejected the broad application of *Lockridge* asserted by the majority here.[2]

This circuit is not alone in recognizing the limited impact of *Lockridge*. In *Beriault v. Local 40 Super Cargoes & Checkers*, 501 F.2d 258 (9th Cir. 1974), the Ninth Circuit noted the *Lockridge* dicta quoted by the majority in the instant case but rejected the notion that *Lockridge* requires the equivalent of bad faith for all fair representation claims. "[U]nion conduct breaches the duty of fair representation when it is 'arbitrary, discriminatory, *or* in bad faith.' [*Vaca*, 386 U.S. at 190, 87 S.Ct. at 916]. [Emphasis added]." *Beriault*, 501 F.2d at 263.[3] A

subsequent Ninth Circuit decision emphasized that

"Arbitrary" conduct is not limited to intentional conduct. For example, to "ignore a meritorious grievance or process it in a perfunctory fashion" may be arbitrary. *Vaca v. Sipes* . . . . *See also Hines v. Anchor Motor Freight* . . . .

*Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d 1082, 1089 (9th Cir. 1978).

Cases such as *Hines, Gateway, Baldini, Beriault* and *Robesky* do not bear out the apparent thesis of the majority that fraud, deceitful action, dishonest conduct or deliberate and severely hostile and irrational treatment are requisite to establishing a breach of the duty of fair representation in an action based on a breach of the collective bargaining agreement. The more appropriate standard, as set out by this court in *Baldini*, is whether the union has been "guilty of malfeasance and [whether] its conduct was within the range of acceptable performance by a collective-bargaining agent." *Baldini*, 581 F.2d at 151 (*quoting Hines*, 424 U.S. at 568, 96 S.Ct. at 1058). Simple negligence is not enough to meet that standard although something less than scienter (or intentionality) seems to be sufficient given this court's decision in *Gateway*. "Egregious" behavior (not necessarily intentional), *Robesky*, 573 F.2d at 1089–91, apparently constitutes the triggering level of conduct for a union's breach of its duty of fair representation without doing violence to the decisions of this court and other federal courts.[4]

1. I cannot agree with the majority's statement that the language in *Baldini* was merely dicta. This court ruled against the Union in *Baldini* based upon a less stringent standard than that advocated by the majority in the instant case.

2. Earlier decisions of this court that uncritically accepted the language of *Lockridge, see, e. g., Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 293 (7th Cir. 1975), were written before *Hines* and do not represent this circuit's authoritative assessment of the impact of *Hines. Baldini* and *Gateway* provide much more relevant authority.

3. *Beriault* cited the following decisions of other circuits as consistent with its view of *Lockridge*:

*Sanderson v. Ford Motor Co.*, 483 F.2d 102, 110 (5th Cir. 1973); *Woods v. North American Rockwell Corp.*, 480 F.2d 644, 648 (10th Cir. 1973); *Griffin v. UAW*, 469 F.2d 181, 183 (4th Cir. 1972).

*Beriault*, 501 F.2d at 264.

4. As a personal matter (writing on a clean slate), I should think that the most appropriate

When dealing with unintentional conduct at least, a standard of "egregiousness," which suggests the existence of exceptional circumstances, is necessary to protect the employer's interest in being able to rely on the finality of the grievance procedure. Employers might have little incentive to negotiate a grievance procedure if they could be exposed to employee suits by simple negligence on the part of the union. I do not believe it is necessary, however, to shift to a test of "invidious discrimination" to guard against the inroads upon the grievance procedure which would follow if § 301 suits could be brought too easily. Indeed, such a standard renders meaningless the "arbitrary" portion of *Vaca's* "arbitrary, discriminatory, or in bad faith" representation standard.

Here, the union has failed to exercise its discretion with respect to plaintiff's grievance. In that sense, the union's conduct, even though not intentional, has been "arbitrary." Deference to union decisionmaking is essential to the purposes of the *Vaca* standard. But deference to a union's *failure* to make a decision serves no valid union interest. Nonetheless, although the question is close, I do not believe the union's default is sufficiently egregious here to outweigh the employer's interest in the finality of the grievance procedure.[5] Hence, I concur in the result.[6]

principles are cogently rationalized by Judge Kennedy in his concurrence in *Robesky*. Judge Kennedy rejects the effort to define the term "arbitrary" by using tort law concepts of culpability. On a tort law basis, use of the "arbitrary" standard would apparently proscribe conduct not involving bad faith but which is more blameworthy than ordinary negligence. But, according to Judge Kennedy, neither the law of torts nor precedents in the federal common law of labor relations provide adequate guidance to define the term "arbitrary."

Instead, the issue should be one of whether the procedures followed in the handling of the grievance were adequate. "The Supreme Court has required that in exercising [its] discretion a union should adjust grievances in a manner that is neither arbitrary nor perfunctory.... The standard of review imposed by this rule seems ... to require the kind of scrutiny [courts] use whenever [they] review a determination of an individual or body entrusted with discretionary power. [Courts] inquire whether the discretion granted has been abused by a failure to make a reasoned decision.... [Courts] should inquire whether the union decisions lacked a rational basis, or whether by perfunctorily processing a grievance so that a reasoned decision was not made, the union foredoomed the grievance." *Robesky, supra,* at 1092 (Kennedy, J., concurring).

5. My balancing of the interests may be slightly different from that undertaken by the Sixth Circuit in *Ruzicka I*. The majority appears to intimate, however, that the Sixth Circuit's second opinion in *Ruzicka, Ruzicka v. General Motors Corp.,* 649 F.2d 1207 (6th Cir. 1981) (*Ruzicka II*) somehow modified *Ruzicka I*. Quite to the contrary, *Ruzicka II* reaffirmed *Ruzicka I's* holding that failing to process a grievance without a sound reason constitutes arbitrary conduct under the *Vaca* standards. *Ruzicka II,* slip opinion at 11. The language in *Ruzicka II* concerning a need to show that the union "intended to harm" the employee only related to the appropriate standard when the union had a reason for its actions, *i. e.,* union conduct that was *not arbitrary* under the definition employed in *Ruzicka II. Ruzicka II,* at 1211 n.3. Under *Ruzicka II,* the deference to union decisionmaking cited by the majority would only apply where the union was relying on past employer practices when it failed to file a statement required for arbitration within the time limit. If there was no reliance, *i. e.,* mere forgetfulness, *Ruzicka II* would still find a breach of the duty of fair representation.

6. It has never been suggested that in fair representation suits, the union might be liable even though its fault was not sufficient to permit suits against the employer. The present case is one where the union has been guilty of a failure to act on a grievance—a serious default yet not one I think merits allowance of a suit against the employer on these facts.