952 F.2d 405
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Willie J. WALTON, Plaintiff-Appellant,
v.
AMERICAN STEEL CONTAINER and Local 100A United Food &
Commercial Workers International Union, AFL-CIO,
CLC, Defendants-Appellees.
 No. 91-1292.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 3, 1991.*
Decided Jan. 10, 1992.
Rehearing Denied Feb. 4, 1992.
 
 Before WOOD, JR. and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Willie J. Walton filed suit claiming that his former employer, American Steel Container (American Steel), impermissibly terminated his employment. He alleged the employer committed three violations: 1) wrongful discharge, in violation of § 8(a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(3) and § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; 2) terminating him due to his age, in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1); and 3) firing him in retaliation for filing two worker's compensation claims. Walton also brought suit against Local 100A United Food and Commercial Workers International Union (Union), of which he was a member, claiming that the Union breached its duty of fair representation, violating § 8(b) of the NLRA, 29 U.S.C. § 158(B)(2), and § 301 of the LMRA, 29 U.S.C. § 185. The district court granted summary judgment to both the employer and the union, and Walton appeals.
 
 I. BACKGROUND
 
 2
 Defendant American Steel fired plaintiff Willie Walton on December 13, 1989, for refusing to return to work. Walton began his 7:00 a.m. to 3:30 p.m. shift by reporting for work in the "tight head drum" department, as ordered. At approximately 2:00 p.m., after only 6.5 hours of work, the employees in this department completed the day's work. Walton was then ordered to go help complete the work in another department. Noticing that other employees with less seniority were leaving work for the day, he refused and punched out on his time card. Walton apparently believed that because of his seniority, he should have been given the option of staying or going home early. A supervisor then took Walton's time card and asked the plaintiff to go with him to the office of Mark Spitz, American Steel's president. The supervisor explained that Walton was required to work at his request. Walton refused to return to work, again stating that he believed he was entitled to go home. Spitz fired Walton. Spitz immediately found a union steward, and the two men talked to Walton in the parking lot. Both men explained that Walton should return to work and would be terminated for refusing to do so. Walton still refused to return to work.[1]
 
 
 3
 During the time Walton worked for American Steel, he was a member of the Union which represented American Steel employees under a collective bargaining agreement. According to Walton's complaint, he contacted Union representative Charles Barton on December 14, 1989, to ask the Union to grieve his discharge. Walton contends that Barton told him the Union would not pursue a grievance. The complaint also states that Walton again contacted Barton on December 15, 1989. This time Barton stated that he would ask Spitz to change the discharge to a lay-off.
 
 
 4
 On December 20, 1989, Walton filed this suit alleging wrongful termination and that the Union refused to represent him in challenging the discharge. Walton alleges that he had a right to refuse to work because less senior employee's were allowed to leave. He concludes that American Steel could not terminate him, implying that the termination violated the collective bargaining agreement. In addition, Walton complained that on other, unspecified, occasions he was treated unfairly by the employer and "the union did nothing."
 
 
 5
 On December 27, 1989, the Union officially filed a grievance challenging Walton's termination. A grievance meeting was held on February 5, 1990, which Walton did not attend. At this meeting, Spitz stated that he would not withdraw the termination and reinstate Walton. According to an affidavit submitted by Charles Barton, the Union decided not to submit the matter to arbitration because it felt that Walton could not prevail.
 
 
 6
 On July 3, 1990, Walton submitted an amended complaint. In this complaint, he alleged that he was terminated due to his age.[2] Walton identified another incident, on August 29, 1989, when he believed he was wrongfully terminated, additionally alleging that the Union refused to file a grievance.[3] In addition, Walton also claimed that he was discharged in retaliation for filing two Worker's Compensation claims.
 
 
 7
 On August 24, 1990, American Steel filed a motion for summary judgment which the district court granted on November 8, 1990. On December 12, 1990, the defendant Union filed a motion for summary judgment which was granted on January 28, 1991. Walton filed a notice of appeal with the district court on February 5, 1991.
 
 II. JURISDICTION
 
 8
 As a preliminary matter, American Steel argues that this court lacks jurisdiction over the district court's entry of judgment in its favor on November 8, 1990. The employer argues that the November 8 decision was a final appealable order under Federal Rule of Civil Procedure 54(b) from which Walton failed to file a timely notice of appeal. On November 15, 1990, Judge Kocoras entered judgment for American Steel pursuant to Federal Rule of Civil Procedure 54(b) stating: "There being no just reason for delay this is a final and appealable order." As Walton did not appeal from this order, we need to determine whether the district court's grant of summary judgment was a final order. In Buckley v. Fitzsimmons, 919 F.2d 1230, 1237 (7th Cir.1990), this court explained:
 
 
 9
 We understand a "claim" for purposes of Rule 54(b) to mean factually or legally connected elements of a case. ... "It has seemed to us implicit in the rule that the retained and the appealed claims must be factually distinct, for otherwise the court of appeals may be forced to analyze the same facts in successive appeals, a form of piecemeal appealing not authorized by the rule." Olympia Hotels Corp. v. Johnson Wax Development Corp., 908 F.2d 1363, 1366 (7th Cir.1990).
 
 
 10
 The district court treated Walton's unfair labor practice claim against American Steel as falling only under § 8 of the NLRA, the statutory section identified in the complaint. Section 8(a)(3) of the NLRA, 29 U.S.C. § 158(a)(3) provides, in part: "It shall be an unlawful employment practice for an employer--by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." The district court granted summary judgment to American Steel because Walton failed to allege or present any evidence of anti-union animus or conduct "inherently destructive" to the collective bargaining process. Such a showing is necessary to prove a violation of § 8(a)(3).
 
 
 11
 The district court found that Walton failed to state a claim under § 8 of the NLRA.[4] Our reading of the pleadings and the record as a whole, lead us to conclude that Walton attempted to assert a hybrid claim alleging that the employer violated the collective bargaining agreement enforceable under § 301 of the NLRA and that the union breached its duty of fair representation.[5] Had the district court treated Walton's allegations as stating a hybrid claim against the union and the employer, claims which are inextricably interdependent, we doubt that the district court could enter a final judgment for the employer without first resolving the claim against the union. See Breininger v. Sheet Metal Workers Intern., 110 S.Ct. 424 (1989); Vaca v. Sipes, 386 U.S. 171 (1967). However, the district court's misconstruction of Walton's claim does not affect the finality of the order granting judgment in favor of American Steel. The district court believed that Walton claimed only a violation of § 8, a claim which is separate and distinct from the claim against the union. The judgment entered on this claim, as well as the ADEA and retaliation claims, was final and appealable. Walton was required to appeal any error made by the district court in this order within 30 days of the entry of that judgment. He did not. The appeal of the judgment in favor of the employer is dismissed for lack of jurisdiction.
 
 III. ANALYSIS
 
 12
 We review a grant of summary judgment de novo. "[W]e first determine whether there are any genuine issues as to any material facts and then, if no issues of material fact exist, we decide whether summary judgment is correct as a matter of law." Thomas v. United Parcel Service, Inc., 890 F.2d 909, 914 (7th Cir.1989). We view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.' ". Id.
 
 
 13
 Walton claims that the Union breached its duty of fair representation in its handling of his grievances against American Steel. To succeed on this claim, Walton must prove intentional misconduct by the Union. The union's duty "is not breached and the employee has no remedy without substantial evidence of fraud, deceitful actions or dishonest conduct." Thomas, 890 F.2d at 923 (quoting Hoffman v. Lonza, Inc., 658 F.2d 519, 522 (7th Cir.1981)). "The duty of fair representation does not require the union to prosecute frivolous grievances to the full extent under the collective bargaining agreement, for it is well-established that a union need not process a grievance through arbitration." Thomas, 890 F.2d at 919 (citing Hines v. Anchor Motors Freight, Inc., 424 U.S. 554, 567 (1967)).
 
 
 14
 The collective bargaining agreement between American Steel and the Union states that a normal work day is comprised of eight hours. The contract also provides for temporary transfers. Nothing in the agreement allows an employee to refuse a work assignment and leave before the end of the eight hour shift. In regard to the termination on December 13, 1989, both the employer and the Union immediately told Walton that his actions were not protected by the collective bargaining agreement and his continued refusal to work would result in dismissal. The Union filed a grievance on Walton's behalf, but declined to take the matter to arbitration. In light of these undisputed facts, we cannot conclude that the Union's conduct was "arbitrary, discriminatory, or in bad faith." Thomas, 890 F.2d at 922. Nor do we find that the Union breached its duty in respect to Walton's August 29, 1989 termination. The Union again grieved the employer's actions, and managed to have the dismissal decision reversed. Walton, instead, received a five day suspension.
 
 
 15
 For the reasons stated in this order, the grant of summary judgment to the Union is
 
 AFFIRMED
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Walton claims that following this conversation, he decided to return to work. However, the department had already completed the day's work
 
 
 [2]
 Walton filed an age discrimination claim with the EEOC on March 8, 1990
 
 
 [3]
 Walton attached a copy of a charge that Walton brought before the NLRB concerning this incident to his amended complaint. Walton was terminated for refusing to help load barrels on a truck. His refusal stemmed from back and shoulder problems. A union steward spoke with Spitz who agreed to rescind the termination and place Walton on a 5-day suspension for insubordination
 
 
 [4]
 Claims alleging only a violation of § 8 fall within the exclusive jurisdiction of the National Labor Relations Board (NLRB), a point which, surprisingly, the employer did not raise in the district court
 
 
 [5]
 In his complaint, Walton alleged that American Steel and the Union violated § 8(a)(3), 29 U.S.C. § 158(a)(3), and § 8(b)(2), 29 U.S.C. § 158(b)(2), of the National Labor Relations Act. In the civil cover sheet submitted with his complaint, and in his application to proceed in forma pauperis, Walton claimed that the acts violated § 301 of the LMRA, 29 U.S.C. § 185. Section 301(a) provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.